225 So.2d 225 (1969)
SISTERS OF THE GOOD SHEPHERD
v.
QUINN CONSTRUCTION COMPANY et al.
No. 3604.
Court of Appeal of Louisiana, Fourth Circuit.
July 7, 1969.
Rehearing Denied August 4, 1969.
Chaffee, McCall, Phillips, Burke, Toler & Sarpy Leon Sarpy and Peter A. Feringa, Jr., New Orleans, for plaintiff-appellee.
David H. Seelig, New Orleans, for Quinn Const. Co., Inc., and American Employers Ins. Co., defendants-appellants.
Polack, Rosenberg & Rittenberg, Samuel I. Rosenberg and Patrick M. Reily, New Orleans, for American Biltrite Rubber Co., Inc., third-party defendant-appellant.
Huddleston & Davis, Albert J. Huddleston, New Orleans, for The Normand Co., Inc., third-party plaintiff-appellee.
Deutsch, Kerrigan & Stiles, Ralph L. Kaskell, Jr., and Frederick R. Bott, New Orleans, for Douglass V. Freret, third-party defendant-appellee.
Before CHASEZ, BARNETTE and LeSUEUR, JJ.
BARNETTE, Judge.
The plaintiff, the Sisters of the Good Shepherd, a Louisiana nonprofit corporation, filed suit against the defendants,[1] *226 Quinn Construction Company, Inc., and Quinn's contract surety, American Employers Insurance Company, endeavoring to recover the sum of $75,000 (reduced by amendment to $46,080.80), representing damages which it asserts were incurred as the result of the breach of a construction contract entered into between it and the defendant Quinn for the erection of a multi-building convent in Westwego, Louisiana. The construction work which forms the basis of this suit was done in 1961. This suit was filed June 29, 1967.
The defendants filed answer in which they denied fault and affirmatively alleged the completion of the buildings set forth in the contract in accordance with the plans and specifications of the project architect, Douglass V. Freret. They pleaded alternatively a set-off of an unspecified amount which had been withheld by plaintiff and which was remaining due and unpaid to the contractor Quinn. Quinn did not specifically plead in reconvention for recovery of this amount as it might have done under LSA-C.C.P. arts, 1061-63, but did pray for judgment dismissing plaintiff's demands and that plaintiff by "ordered to turn over" to it the funds due under the terms of the contract.
Defendants assumed the position of third-party petitioners naming Freret, the architect, and The Normand Company, Inc., a subcontractor which actually performed the tile-laying job which forms the subject of this litigation, seeking full indemnity from them in the event it should be cast in judgment to plaintiff.
The Normand Company answered the defendant's third-party petition and denied that the defective condition of the tile was caused by any fault or neglect of its agents and employees, but instead asserted that the defective flooring condition was caused by the improper design or construction of the concrete floor slabs, or because the substitute vinyl asbestos tile and adhesive specified by the architect was defective. Consequently, The Normand Company filed a third-party petition against Freret, Quinn Construction Company, Inc., and American Biltrite Rubber Company, Inc., the supplier of the flooring material which was eventually laid in the buildings of the Convent complex.
Both third-party petitions against Freret were dismissed before trial below on exceptions of no cause of action. Neither third-party plaintiff appealed the judgment of dismissal of its demands against Freret.
In response to the third-party petition of The Normand Company, American Biltrite filed an exception of prescription of one year predicated upon the theory that the third-party petition states a cause of action against it only for redhibition or quanti minoris. After this exception was overruled, American Biltrite, Inc., answered The Normand Company's third-party petition and denied that the tile or mastic adhesive was in any way defective.
After a trial on the merits, the lower court in its "Reasons for Judgment" merely found: "The floor is defective. The only issue is who is at fault. The court is of the opinion that the Third Party Defendant, American Biltrite Co., Inc., is solely to blame." It then rendered judgment in favor of the plaintiff against Quinn Construction Company and American Employers Insurance Company solidarily for $46,080.80, subject to a credit for the amount withheld under the contract and admitted to be $5,183.71. Judgment was further rendered in favor of Quinn and American Employers against The Normand Company in the sum of $46,080.80, and a like judgment was rendered in favor of The Normand Company against American Biltrite Rubber Company. From this judgment, Quinn, American Employers Insurance Company, and American Biltrite Rubber Company, Inc., have appealed.
The plaintiff entered into a building contract with Quinn Construction Company for the erection of a series of buildings to be used as a convent for approximately *227 $1,500,000. Quinn, in turn, subcontracted the flooring work to The Normand Company, Inc., which agreed to install the flooring in accordance with the plans and specifications prepared by the plaintiff's architect. The flooring was installed and subsequently the adhesive used to secure the tile to the concrete floor slabs on the ground level in all the buildings began to seep between the cracks of the tile. Moreover, some of the tile began to slip and come loose under normal traffic loads. The second story flooring installations experienced no such failure.
The lower court found, and it is undisputed on appeal, that the floor on the ground level in the several buildings described was in fact badly defective. The lower court as quoted above found that only American Biltrite, the supplier of the materials, was at fault, being "solely to blame" for the floor failure. It found no fault on the part of the general contractor, Quinn, or the flooring subcontractor, Normand.
The record clearly shows that the contractor had nothing to do with the installation of the tile and that the ultimate floor failure was not due to defects in the basic construction in the ground floor level of the buildings. The defendant Quinn denies its liability citing LSA-R.S. 9:2771, which provides as follows;
"No contractor shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor."
We find, as obviously the trial court did, that Quinn faithfully performed its contract in accordance with the plans and specifications prepared and furnished by plaintiff's architect, and that Quinn neither made nor caused the plans and specifications to be made. Pittman Construction Company v. City of New Orleans, La.App., 178 So.2d 312 (1965). In that case this court held that it is not the burden of the contractor under the cited statute to prove the fault or insufficiency of the plans or specifications. The statute, according to the jurisprudence interpretative thereof, was designed to relieve the contractor of being the guarantor of the sufficiency of the plans and specifications drawn by another person. Washington Parish Police Jury v. Belcher & Son, Inc., 215 So.2d 849 (La.App. 1st Cir. 1968); Barnhill Bros., Inc. v. Louisiana Dept. of Highways, 147 So.2d 650 (La.App. 1st Cir. 1962).
The plaintiff seeks to hold Quinn liable under Article 36 of the "General Conditions" of the contract, which reads as follows:
"The Contractor agrees that he is as fully responsible to the Owner for the acts and omissions of his subcontractors and of persons either directly or indirectly employed by them, as he is for the acts and omissions of persons directly employed by him.
"Nothing contained in the contract documents shall create any contractual relation between any subcontractor and the Owner."
and which provides further under Article 12:
"PROTECTION OF WORK AND PROPERTY
"The Contractor shall continuously maintain adequate protection of all his work from damage and shall protect the Owner's property from injury or loss *228 arising in connection with this Contract. He shall make good any such damage, injury or loss, except such as may be directly due to errors in the Contract Documents or caused by agents or employees of the Owner, or due to causes beyond the Contractor's control and not to his fault or negligence. * * *"
Under the foregoing provisions of the contract, Quinn, the general contractor, would be liable for any damage caused the plaintiff (owner) by its subcontractor Normand or Normand's employees. But we find nothing in the above contract, and no other pertinent provision has been pointed out to us, by which Quinn can be held for damages caused by a supplier of materials, assuming arguendo, that the flooring failure was caused by defective materials.
Since the question of defectiveness of the flooring tile or mastic, vel non, is of great importance to a final resolution of the issue of fault, it should be stated at this point that the responsibility for floor tile selection and specifications was that of the owner or its agent and beyond the control of Quinn.
Originally the contract, in accordance with the architect's specifications, called for one-eighth inch pure vinyl tile. In order to reduce costs this was changed to asphalt tile and later this specification for certain buildings and areas was changed to one-sixteenth inch "Vinyl Plastex" tile as manufactured by "Amtico" (American Biltrite Company). This was confirmed by letter of March 10, 1961, from the architect to Quinn Construction Company, Inc., the pertinent part of which is as follows:
 "This will authorize the following changes in the above contract.
 1. As per your letter of February 9, 1961, for using 1/16" vinyl
 Plastex as manufactured by Amtico in 9" × 9" sizes, in lieu of asphalt
 tile in those areas where asphalt tile is contracted for, an extra
 to the contract is authorized in the amount of .. $24,469.00 Add
 Before any vinyl tile is installed, all floor areas that are to receive
 vinyl tile must first be inspected and approved by the Architects
 as being in suitable condition to satisfactorily receive the vinyl
 tile.
 2. As per your letter of March 7, 1961, for the omission of asphalt
 tile floors and base in areas specified, which are now to receive
 ceramic tile as covered by Change Order #9, a credit to the contract
 is authorized in the amount of..........$ 322.00 Credit
 TOTAL EXTRA THIS CHANGE ORDER......$24,147.00
 Very truly yours,
 FRERET AND WOLF
 [Signed] Douglass V. Freret
 Douglass V. Freret
 APPROVED:
 Convent of the Good Shepherd
 By [Signed] Sister Mary of St. Stanislaus"
Nowhere in the above-quoted portions of the contract, upon which plaintiff relies, does the contractor undertake to guarantee the sufficiency of materials ordered either by the owner, his agent or his architect, or for errors in inspection and approval reserved *229 to the authority of the architect. The only agreement is that the contractor assumes responsibility for the acts and omissions of his subcontractors and of persons directly or indirectly employed by them. Moreover, the last sentence of LSA-R.S. 9:2771 provides that the provisions of the section are not subject to waiver by the contractor. Consequently, even if Article 36 of the "General Conditions" were construed to include defective materials, it is doubtful that the contractor complying with the plans and specifications could be held to have waived the benefits of the quoted statute.
The remaining issues are questions of fact; i.e., whether the subcontractor, The Normand Company, was at fault in laying the tile, or whether the insufficiency of the floor was caused by the defectiveness of the materials furnished to The Normand Company by American Biltrite. If The Normand Company did not comply with the plans and specifications and laid the floor in a faulty manner, then it is liable to Quinn under the general law of contract, and Quinn is in turn liable to the plaintiff under both the general contract law and Article 36 of the "General Conditions" as quoted above. On the other hand, if The Normand Company was not at fault, and the true cause of the damage was the insufficiency of the materials ordered by the architect and supplied by American Biltrite, then both The Normand Company and the general contractor, Quinn, are relieved of liability under the provisions of LSA-R.S. 9:2771. In such case the plaintiff's grievance would be against its architect or American Biltrite, neither of whom plaintiff made defendant in this proceeding.
As might be expected, American Biltrite attempted to prove that The Normand Company was at fault in several respects in the laying of the tile. It contended, for example, that too much mastic was applied; that not enough drying time was allowed before the tile was laid; that the slabs were not properly prepared; and that the tile was laid in a faulty manner. The primary evidence presented in support of its position was that its own expert. The record contains opposing theories and speculation and some conflicting evidence on this particular point. However, the trial court found as a matter of fact that The Normand Company was in no way at fault in the installation of the mastic or tile. Our review of the record indicates that this finding is amply supported by the evidence, and we fully agree with it.
In view of this finding, it is not necessary for us to indulge in a protracted discussion of the nature of the tile and mastic supplied by American Biltrite, since the plaintiff, not having filed pleadings against American Biltrite directly, has precluded the adjudication of any issues between them in this proceeding. By way of dictum, however, it might be pointed out that there is some confusion in the record concerning the true cause of the failure of the flooring. The buildings were constructed in close proximity to the Mississippi River, and there is some question in our minds as to whether the flooring failed because of the defective materials or because the effect of hydrostatic pressure on the moisture content of the ground-level slab was not contemplated or compensated for in the architect's plans and specifications. In any event, however, we refrain from expressing an opinion or speculating on this matter in view of the possibility of further litigation thereon.
In view of the fact that both the original defendant and the flooring subcontractor complied with the plans and specifications prepared by the owner's architect, they are relieved of any liability to the plaintiff by virtue of the authority of LSA-R.S. 9:2771. Since the plaintiff did not file any pleadings directly against the third-party defendant, American Biltrite, for furnishing defective materials, there can be no judgment rendered directly in favor of the *230 plaintiff and against this third-party defendant. Consequently, the plaintiff's claim against all defendants must fall.
We mentioned above that the plaintiff had withheld payment of a balance due the contractor, Quinn. The amount was determined to be $5,183.71 and is not disputed. While Quinn alternatively pleaded his in defense as a set-off in the event the plaintiff should be granted judgment, it did not formally or specifically plead in reconvention. However, its prayer is sufficiently broad to constitute a demand for payment of the then undetermined amount. Furthermore, the pleadings may be construed as having been enlarged by the testimony taken without objection, and the amount is not disputed. We will therefore exercise our authority under LSA-C.C.P. art. 2164 and grant judgment in favor of the defendant Quinn as though it had specifically pleaded for judgment in reconvention.
For the foregoing reasons, the judgment of the lower court is hereby reversed, and judgment is rendered against the plaintiff, Sisters of the Good Shepherd, in favor of the defendant Quinn Construction Company, Inc., dismissing the plaintiff's suit at its costs. Judgment is further rendered in favor of The Normand Company, Inc., against the Quinn Construction Company, Inc., dismissing the latter's third-party petition at its costs. Judgment is further rendered in favor of Quinn Construction Company, Inc., and American Biltrite Rubber Company, Inc., against third-party petitioner, The Normand Company, Inc., dismissing its third-party petition at its costs. It is further ordered, adjudged and decreed that there be judgment in favor of Quinn Construction Company, Inc., against Sisters of the Good Shepherd in the full sum of $5,183.71 with legal interest thereon from September 18, 1967, together with all costs.
Reversed and judgment rendered.
NOTES
[1] The plaintiff also named as defendants two other parties as flooring subcontractor and surety, but this portion of the suit was later dismissed upon the discovery that the wrong defendants had been sued.