260 So.2d 767 (1972)
Walter J. LEBRETON, Sr.
v.
T. A. BROWN et al.
No. 4905.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1972.
Rehearing Denied May 2, 1972.
Writ Refused June 15, 1972.
*768 Walter J. Lebreton, Sr., in pro. per.
Connolly, Nowalsky, Lambert & Labranche, Frans J. Labranche, Jr., New Orleans, for defendant-appellee, Vincent A. Simoneaux.
Occhipinti, Occhipinti, Tamberella & Vosbein, Henry C. Vosbein, Jr., New Orleans, for defendant-appellees, Tracy A. Brown and Donnis W. Brown.
Before REDMANN, GULOTTA and STOULIG, JJ.
GULOTTA, Judge.
This is a suit seeking compensation for damages to plaintiff's residence allegedly caused by a faulty foundation attributable to a breach of contract by defendants. Plaintiff, a home owner, contracted with several individuals, including defendants, Tracy A. Brown, d/b/a Flat Top Roofers,[1] and Vincent Simoneaux, for the construction of certain improvements on his home.
The trial court dismissed plaintiff's suit, concluding that he had failed to "prove his *769 case".[2] The court also found from the evidence that plaintiff had furnished the plans and specifications which defendants followed and not defendants themselves.
Despite plaintiff's insistence that he did not furnish specifications for the work with defendant Brown for installation of reinforced concrete pilings, the initial contract entered into on June 12, 1963, indicates otherwise.[3]
Furthermore, defendant Tracy Brown testified that plaintiff was the party who supplied the specifications and plans for the entire job. One of the exhibits is a plan admitted by plaintiff to have been prepared by him in which he indicates the location of the desired additions to his residence and even specifies where each of the 42 or 43 pilings are to be placed for the foundation. Plaintiff physically staked out where the pilings should be.
Testimony of Homer H. Horton, Jr., architect who recommended defendant Vincent Simoneaux to plaintiff, and testimony of Simoneaux established to our satisfaction that plaintiff also furnished the specifications to Simoneaux for the contract executed between him and plaintiff on November 25, 1963. We are, therefore, convinced that plaintiff himself furnished the plans and specifications to both defendants as found by the trial judge.[4]
It is undisputed that plaintiff's residence has sustained considerable structural damage. However, the record is devoid of sufficient proof that this damage was caused by the defendants' breach of their contractual agreements with plaintiff. Plaintiff's expert, George S. Schrenk, a structural engineer, testified to the structural damage to plaintiff's residence and attributed it to weak or faulty foundations. While the evidence reflects that the movement of the building and resulting damage was caused because of foundation failure, there was insufficient proof to show that it was Brown's unworkmanlike installation of the foundation or pilings that caused this movement.

LIABILITY OF SIMONEAUX
At the outset, we find it difficult to ascertain how defendant Simoneaux could be liable for damages because of inadequate foundations when Simoneaux's contract did not include installation of the pilings plaintiff claims were defective. Simoneaux did, however, construct a chain wall support and porch. There was insufficient evidence that the chain wall and porch were inadequate. Henry Bergeron, a Civil Engineer who was Simoneaux's expert, indicated that the porch was being pushed by a more massive structure at the rear of the residence. Furthermore, Bergeron testified that any movement of the porch was horizontal and not vertical and indicated the porch wasn't on weak foundation or too heavy for the soil. Thus, we fail to see any connection between the work contracted out to Simoneaux and the fault in construction of which plaintiff complains. Furthermore, the record does not contain sufficient proof that the work undertaken by Simoneaux was not completed or performed in a workmanshiplike manner. The testimony of Horton and Bergeron was to the contrary, i. e., that Simoneaux's work was properly performed.

LIABILITY OF BROWN
The initial contract[5] between Brown and plaintiff related to the installation of concrete *770 pilings. The pertinent parts of this contract are:
"According to plans discussed and furnished to contractor by the owner and at points marked by the owner, contractor will drill forty-three (43) piling holes at least eight (8) inches in diameter down to the foundation or basic sand bed or strata in this area, to accomodate these tip-bearing pilings which will exceed the New Orleans Building Code's requirements for the usual Class 9 Creosoted residential pilings called for in owner's building permit No. A-46817, as follows: * * *"
"Contractor guarantees that these pilings will exceed the weight-bearing and other requirements and specifications, of the Building Permit plans, as discussed; * * *" (emphasis ours)
In substance, these provisions are those which plaintiff claims were not followed by Brown.
Plaintiff contends that Brown breached the contract because he did not drill 20 to 30 feet down before setting the pilings but the pilings only went down 8-8½ feet. This and the way the concrete was set caused the foundations to weaken and the new additions to shift and pull away from the original structure.
We note that the contract says nothing about the pilings being put down 20-30 feet. The only requirement was that Brown drill to the basic sand bed or strata. Despite plaintiff's insistence that Brown did not drill deeply enough, he admitted in testimony that Brown had drilled to the basic sand bed. Moreover, the testimony of Brown is that while on the job site, after some of the holes were drilled, plaintiff shoved a long board down the holes to ascertain if Brown had reached the hard sand bottom. Plaintiff failed to register a complaint at that time that the holes were too shallow. Plaintiff argues that pilings 20 to 30 feet deep were necessary; however, his only basis for this contention is that another structure in the vicinity had taken pilings that deep. Furthermore, the record convinces us that these holes were drilled to a depth of 11-12 feet for the foundations, not 8-8½ feet as plaintiff suggests. Plaintiff never adequately explains the source of his conclusion that the pilings were so shallow.
Brown testified that plaintiff had observed the work as it was being done and had looked into at least 80 percent of the holes Brown drilled. Brown even showed plaintiff samples of the sand he removed from the bottom of the holes. Brown stated that plaintiff never registered a complaint or suggested he was displeased with Brown's work at any time during the job. Brown said he was never contacted by plaintiff and that he could have easily rectified any movement with additional pilings if he had known of it.
Plaintiff complains that another fault with the foundation was that it was weakened because of the method employed by Brown in pouring cement into holes with water in them. Brown explained that this is not unusual and that he had used this method at the most on five or six holes for the forty-two because it had rained one day. Brown adequately explained the sufficiency of this method. He uses PSI 3000 lb. mixed concrete when water is in the hole and adds a 100 lb. sack of cement to the cubic yard mix to compensate for any possible weakness suffered by water in the hole. The weight and amount of cement offset the presence of water. Plaintiff's proof of an unworkmanlike performance by Brown is lacking.

CONTRACTOR'S DUTY
We have considered whether an experienced contractor is under a duty to *771 check the specifications furnished to them by an owner to determine if they are sufficient before proceeding. The law imposes no such duty. We note the language in Katz v. Judice, 252 So.2d 532, 536 (La.App. 4th Cir. 1971), writ ref'd:
"* * * The contractor who enters into a contract for construction in accordance with the plans and specifications furnished to him by the owner cannot be held to warrant the sufficiency of the plans and specifications, but he may rely upon such as is furnished by the owner and his only obligation is that he perform in accordance with those plans and specifications. See Sisters of the Good Shepherd v. Quinn Const. Co., 225 So.2d 225 (La.App. 4th Cir. 1969); Pittman Construction Co. v. City of New Orleans, 178 So.2d 312 (La.App. 4th Cir. 1965) (writ refused) * * *" (emphasis ours)
LSA-R.S. 9:2771 also sets out the liability of contractors for defects in construction when the owner furnishes the plans as in the present case:
"No contractor shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor."
Furthermore, Brown stated that when he entered the contract and performed work under the first phase, he didn't even know at that time what was to be placed on top of the pilings. It was not until plaintiff drew up further plans that Brown knew what plaintiff intended to do the next step. Thus, there would have been no reason for him to feel there was any defect in the specifications as he was not cognizant of the entire project to be undertaken.
On the other hand, if plaintiff had brought substantial proof to show a connection between the allegedly defective foundations and faulty workmanship by the defendants, a basis for liability would exist. LSA-C.C. art. 2762. However, we find no such showing either of defective materials or faulty workmanship which would impose liability. See: Draube v. Rieth, 114 So.2d 879 (Orl.App. 1959).
Having found no evidence of a breach of contract by either defendant, the judgment of the trial court is affirmed.
Affirmed.
REDMANN, Judge (dissenting in part).
All experts agreed that the cause of the worthless condition of plaintiff's improvements was foundation failure (except as to paint flaking off galvanized guttering).
Defendant Simoneaux's work was not shown to have been improperly performed (except inferentially, as to the gutterpainting, as to which cost of repainting was not established). Simoneaux's expert's testimony was that the chain-wall type of foundation used for the porch Simoneaux constructed was completely adequate, and that movement of the other improvements caused the porch's damage.
Defendant Brown did the piling foundations which failed. There is some suggestion that the superstructures were unusually heavy and caused the failure. But the only testimony is that of plaintiff's expert *772 that he calculated the superstructure weight, which was below the 8,000 pound per piling standard for city building code Class 9 piles, which Brown guaranteed in his written contract his piles would exceed.
Thus plaintiff should win irrespective of explanation of the piles' failure. It matters not whether the piling holes caved in at the bottom (leaving soft mud rather than concrete atop the load-bearing sand) or the concrete poured by wheelbarrows into the holes was weakened by (in some admitted instances) being poured into holes full of water (which plaintiff's expert testified would greatly weaken the concrete).
Defendant Brown offered no expert testimony to contradict plaintiff's expert testimony which, in my opinion, shows that Brown's piles did not meet their load-bearing guarantee.
Plaintiff should have judgment against Brown for the $19,942 estimated cost of replacing his improvements.
NOTES
[1] Plaintiff also named Mrs. Donnis W. Brown as defendant. Henceforth, we shall refer to these defendants merely as Brown.
[2] The trial judge dismissed defendants' reconventional demands; however, no appeal was taken from that judgment and, therefore, the dismissal of the main demand, only, is before us.
[3] Within the contract which was drawn up by plaintiff it states: "According to plans discussed and furnished to contractor by the owner, contractor will * * *" (emphasis ours)
[4] Whether plaintiff by furnishing the specifications thus acted as a general contractor, as contended by defendants, is not, in our opinion, determinative of the issue.
[5] Plaintiff refused to accept the simple contract Brown supplied but rather wrote up each phase (there were four phases) of the job in great detail containing his own specifications at the completion of the prior phase. Brown was never presented a single complete contract at the outset with all of the specifications.