## No. 10,054.

### PEOPLE'S BANK vs. HARRY CAGE ET ALS.

When the vendor transfers the notes for the price, for a valuable consideration, to a third person without endorsement and without recourse or warranty, his right and power to demand or receive payment of the price ceases to exist, and with it his right to demand a resolution of the sale in event of non-payment, and the corresponding obligation of the buyer.

Every obligation is the correlative of a corresponding right, and when the right is destroyed the obligation is equally extinguished.

The modes of extinguishing obligations mentioned in C. C. 2130 embrace only those general ones applicable to all obligations, and are not exclusive of a multitude of other particular causes of extinguishment applicable to each peculiar kind of obligation.

The subsequent reacquisition of the notes by the vendor does not operate to revive this obligation which had been thus extinguished.

APPEAL from the Nineteenth District Court, Parish of Terrebonne.
    *Allen*, J.

*H. C. Cage* for Plaintiff and Appellant.

*Braughn, Buck, Dinkinspiel & Hart* for New Orleans National Bank,
Defendant and Appellee.

*Samuel L. Gilmore* for Hibernia National Bank, Defendant and
Appellee:

1.  A restoration or an offer of restoration of the amount received on account of the purchase price is an absolute condition precedent to an action to resolve a sale for non-payment of price. This restoration or offer of restoration must be alleged and proved by the plaintiff in the action as an indispensible preliminary to his suit and cannot be avoided by his attempting to show or by his showing, that the rents and revenues of the property are worth more than the amount he has received on account of the price. Latham vs. Hickey, 21 Ann. 425; Lee vs. Taylor, 21 Ann. 514; George vs. Knox, 23 Ann. 354; Heirs of Castle vs. Floyd, 38 Ann. 587; Hennen's Digest, page 1020, No. 19.

2.  A sale cannot be annulled for the non-payment of a portion of the price, where the parties, from their transactions, have rendered it impossible to place each other in the same situation they were in before the sale. Leflore vs. Carson, 7 Ann. 65. See also cases on the doctrine that transferrer cannot compete with transferree. Howard vs. Schmidt, 29 Ann. 133-4; Barkdull vs. Herwig, 30 Ann. 621; Abney vs. Walmsley, 33 Ann. 589.

3.  The right to sue for the resolution of a sale of property for non-payment of its price is transferable by a special contract to that effect. Heirs of Castle vs. Floyd, 38 Ann. 583; Hamilton vs. State National Bank, Southern Reporter, page 126.

4.  A sale of the notes representing all the unpaid balance of the price of the property transfers the resolutory action to the purchaser of the notes when such sale is accompanied by an act subrogating the purchaser of the notes to all the rights, actions and remedies the vendor had by virtue of the act of sale of the property and giving him authority to exercise these rights, actions and remedies in the same form and manner as the vendor himself.

5.  The sale of the notes representing the unpaid balance of the price of the property extinguishes and terminates in the vendor the right to sue for the resolution of the sale. He is paid the price in the money he receives for the notes, unless he keeps the debt for the price alive for the benefit of the purchaser of the notes by a special contract conveying the right to the resolutory action.

The opinion of the Court was delivered by

FENNER, J.   On January 7, 1876, the People's Bank sold to Harry
Cage certain immovable property for a price of $8000, of which $1000
was paid in cash and the rest was represented by six equal promissory notes, secured by mortgage and vendor's privilege, and falling
due respectively in the years 1877 to 1882, both inclusive. All but the
last two notes were paid.

In 1884, after their maturity, the bank transferred these two notes
(which were payable to Cage's own order and by him endorsed) to

Gidière, Day & Co., executing at the same time a notarial act reciting that it had received in cash the full amount of the notes, that the transfer was made "without recourse on said bank or warranty of any kind," and also containing the clause that the bank does, "moreover, cede, transfer and assign to said Gidière, Day & Co. all of said bank's rights and interest in and to said notes, and to the mortgage securing the same, hereby subrogating the said Gidière, Day & Co. in and to all of said bank's rights, mortgages, actions, liens, privileges and remedies, to which it is entitled, under and by virtue of the provisions, clauses and conditions in said act of mortgage contained, to be by the said Gidière, Day & Co. enjoyed and exercised in the same manner and to the same extent as they could have been by the said People's Bank itself."

A few days thereafter, Cage executed in favor of Gidière, Day & Co. a mortgage to secure two notes of $8500 each, which are now held respectively by the Hibernia National Bank and the New Orleans National Bank.

Subsequently, Gidière, Day & Co. discounted their own note in the People's Bank, as security for which they pledged the two original mortgage notes of Cage, which they had bought from the bank; and, later, by the foreclosure of this pledge, the bank again became the owner of said notes.

Having suffered its mortgage to lapse by failure to reinscribe, it brings the present suit to resolve the sale for non-payment of the price represented by said notes, to which it makes Cage and the Hibernia and New Orleans banks parties.

Various interesting questions are presented in argument, but it is apparent from the face of the foregoing statement that plaintiff has no case.

Under our law the resolutory condition implied in all commutative contracts gives to the seller of property the right to dissolve the sale in case the buyer fails to pay the price.   C. C. 2046, 2561.

Undoubtedly in every contract of sale there is tacitly embodied an obligation on the part of the buyer to restore the thing sold to the seller, on the latter's demand, in case he fails to pay the price.

It is now well settled that this obligation is, in some sort, personal to the seller and does not pass with the transfer of the notes representing the price to a third person, at least without a special transfer of this particular obligation with subrogation.   Hamilton vs. State National Bank, 39 Ann.; Castle vs. Floyd, 38 Ann. 583; Swan vs. Gayle, 24 Ann. 503.

Bank vs. Cage et als.

We need not now definitely decide whether this peculiar obligation is transferable at all, or whether, if transferable, the language of the notarial subrogation quoted in this case was sufficient to embrace it. If it was transferred to Gidière, Day & Co., it is clear that it was never retroceded by them to plaintiff, and hence he has no standing to enforce it.

But if it did not pass to Gidière, Day & Co. it is equally clear that the obligation was extinguished by the transfer of the notes by the seller, for a valuable consideration, without recourse or warranty.

Had the plaintiff remained bound as endorser on the notes, the case might have been different. But the transfer without recourse completely severed his connection with the contract of sale otherwise than as warrantor of the title to the buyer; and, leaving him without right or interest to demand payment of the price, equally destroyed his right to demand resolution of the sale on the ground of non-payment. Every obligation is the correlative of a corresponding right; and when the right is destroyed, the obligation necessarily falls with it.

This seems plain enough in reason and common sense, and is only confused by the groundless assumption on the part of plaintiff's counsel, that obligations can only be extinguished by one of the nine modes mentioned in article 2130 of the Civil Code, and by his claim that, as not one of those modes has operated to extinguish this obligation, it must, *ex necessitate rei*, continue to exist.

The fallacy of this argument will be exposed by a brief quotation from Marcadé's commentary on the corresponding article of the Napoleon Code:

"Besides these general modes, there is a multitude of other causes of extinguishment peculiar to each special kind of obligation. Thus the obligation of a tutor to take charge of the person and property of his ward ceases, not only by the death of either, but also by majority or emancipation of the minor, or by the destitution or excuse of the tutor; my obligation to discharge the mandate which I have accepted ends not only by death, but also by my renunciation or by your revocation of the mandate, etc. These are methods of extinguishment peculiar to particular obligations, which the law does not concern itself with in a title consecrated to the general principles common to all obligations." 4 Marcadé, p. 508.

In the instant case, at the moment when the vendor parted with the right or power to demand or receive the payment of the price, he lost the right to enforce the penalty of resolving the sale because of non-payment, and the correlative obligation was necessarily destroyed.

This would hardly be questioned had Gidière, Day & Co. remained owner of the notes. But the vendor's reacquisition of the notes could not revive an extinguished obligation.

For extinct obligations there is no resurrection. New ones may be created, but the dead rise not again.

Judgment affirmed.