(93 South. 199)

No. 23535.

### ALEXANDRIA & W. RY. CO. v. LONG PINE LUMBER CO. OF LOUISIANA, Inc.

(June 30, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Carriers ☞12(1)—Contract rate not invalidated by subsequent fixing of same rate by Commission.**

The mere fixing of a rate by the Railroad Commission, when it is the same as stipulated in a prior contract between shipper and carrier, does not of itself invalidate such agreement.

**2. Carriers ☞12(1)—Parties may not deviate from rates fixed by state, but may make agreements not conflicting therewith.**

The state, under its police power, may fix rates, and no contract of private persons can deviate therefrom though made prior to such action by the state; but, so long as such agreements do not conflict with the rates and regulations officially prescribed, and there is no discrimination, the parties may stipulate as their interest may require.

**3. Carriers ☞12(1)—Contract fixing rates held abrogated by tariff subsequently approved by Commission.**

An agreement for the shipment of logs at a specified rate, which bound the shipper to ship a specified minimum quantity was abrogated where the carrier subsequently, over the shipper's protest, obtained approval by the Railroad Commission of a tariff fixing the same rate, but conditioned upon the reshipment of the entire product manufactured from the logs so shipped.

**4. Contracts ☞241—Party cannot add onerous conditions without the other party's consent.**

One party to a contract cannot add more onerous conditions thereto without consent of the other.

**5. Contracts ☞278(1)—Party unable to perform cannot exact performance by other party.**

A party to a contract cannot exact of the other party performance when he himself cannot perform.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; James Andrews, Judge.

Action by the Alexandria & Western Railway Company against the Long Pine Lumber Company of Louisiana, Incorporated. From a judgment dismissing the suit, plaintiff appeals. Affirmed.

Blackman, Overton & Dawkins, of Alexandria, for appellant.

A. L. Burford, of Texarkana, Ark., and White, Holloman & White, of Alexandria, for appellee.

By the WHOLE COURT.

DAWKINS, J. Plaintiff brought this suit to recover the sum of $4.75 per car on a minimum of 200 cars per calendar month, for a period of years, as the freight which it would have earned had the defendant delivered to it the quantity of timber which it had agreed to do under a contract between the parties.

The main defenses were that the obligation to ship the timber over plaintiff's line was without consideration, in that the rates which it could charge were fixed by the Railroad Commission, and the railway company bound itself to do nothing more than it was compelled to do under the law, and, further, that the original contract was subsequently modified so as to relieve defendant from shipping its timber from the points stipulated therein, and that, under the second contract, it had delivered to and the plaintiff had been paid for more than 200 cars per month for the time complained of and at much higher rates.

There was judgment for defendant, and plaintiff appeals.

## Opinion.

[1, 2] An examination of the law convinces us that the mere fixing of a rate by the Railroad Commission, when it is the same as stipulated in a prior contract by the shipper and carrier, does not of itself invalidate such an agreement. In the present case, at the time the contract was made, no rate had been named by the Commission, nor was such done for more than a year afterwards. The first fixing was identical with the one already in force under the contract. The state, under its police power, undoubtedly may fix rates, and no contract of private persons can deviate therefrom, even though the same be made prior to such action by the sovereign. But, so long as such agreements do not conflict with the rates and regulations officially prescribed, and there is no discrimination in favor of or against any shipper, the parties are at liberty to stipulate as their interests may require.

In this case the defendant owned a large body of timber, estimated at 160,000,000 feet, which it desired to have transported to its mill many miles away; but, in order to do so, it was necessary that plaintiff's line be extended and proper facilites for the purpose guaranteed. It was also highly advantageous to plaintiff to procure this large tonnage for its line, rather than have it go elsewhere, or for defendant to attempt the construction of its own line; so that it was to the mutual advantage of the parties to make the arrangement. The contract was to continue for a period of eight years, and so long thereafter as might be necessary for defendant's purposes. Defendant agreed to furnish not less than 200 cars per calendar month, and to pay therefor $4.75 per car freight, and any deficiency of that number was to be paid for nevertheless at the same rate. Plaintiff was also to transport all freight needed by defendant in the woods for cutting its timber and its tramroads at half this rate.

" 'Subject to the two leading prohibitions that their charges shall not be unjust or unreasonable, and that they shall not unjustly discriminate so as to give undue preference or disadvantage to persons or traffic similarly circumstanced, the act to regulate commerce leaves common carriers, as they were at the common law—free to make special rates looking to the increase of their business, to classify their traffic, to adjust and apportion their rates so as to meet the necessities of commerce and of their own situation and relation to it, and generally to manage their important interests upon the same principles which are regarded as sound and adopted in other trades and pursuits.' It follows that railroad companies may contract with shippers for a single transportation or for successive transportations, subject though it may be to a change of rates in the manner provided in the Interstate Commerce Act (Armour Packing Co. v. United States, 209 U. S. 56, ante, 681, 28 Sup. Ct. Rep. 428)." Interstate Commerce Commission v. Chicago G. W. R. Co., 209 U. S. 108–123, 28 Sup. Ct. 493, 496, 52 L. Ed. 705–712.

"The purpose of the law was not to embarass

or abolish the right of contract in respect to such matters, but to prevent an unreasonable advantage being conferred upon a particular person. If all may be supplied with cars, notwithstanding an existing contract calls for a large number to a particular shipper, no advantage accrues to that shipper, or disadvantage to others. The authorities cited by counsel for defendant do not, as we read them, go to the extent of holding that a contract of the tenor and effect of that here involved is void upon its face. On the contrary, the whole basis of those decisions is discrimination and undue advantage in facts." Ferrell & Co. v. Great Northern Ry. Co., 119 Minn. 306, 138 N. W. 286.

See, also, 1 Michie on Carriers, § 725, p. 444; Id., § 727, p. 445; Id., vol. 2, § 1507, p. 1137; section 1509, p. 1138; 10 C. J. pp. 212, 213, verbo Carriers, § 290; Chicago, etc., R. Co. v. Beatty, 42 Okl. 528, 141 Pac. 442; Oregon R. R., etc., Co. v. Dumas, 181 Fed. 781, 104 C. C. A. 641.

[3] However, under the original contract in this case, dated January 6, 1914, the plaintiff bound itself to transport the logs and timber of the defendant's predecessor at the rate of $4.75 per car without restriction or condition, except those which we have heretofore mentioned which have no bearing upon the rate. But later on the plaintiff applied to the Railroad Commission and obtained, over defendant's protest, its approval of a tariff carrying the same rate of $4.75 from Gardner (which was the point from which it had theretofore applied), but conditioned upon the defendant's shipping out over plaintiff's line the entire manufactured product arising from the timber so delivered to its mill. This tariff was made effective August 1, 1917, and it was then that defendant stopped deliveries at Gardner. It was for the failure to make deliveries at this point that the suit was brought.

[4, 5] It is well settled that one party to a contract cannot add more onerous conditions thereto without the consent of the other; nor can one exact of the other performance when he himself cannot perform. When the Railroad Commission approved the change requested by the plaintiff, so as to make the rate of $4.75 conditioned upon the reshipment of the manufactured product (making it what is known as a milling in transit rate instead of a direct one) over its line, the former stipulation was thereby abrogated, and there ceased to be a consideration, or it became impossible of performance according to the former arrangement as to the particular obligation of shipping 200 cars of logs per month from Gardner, for plaintiff could no longer allow the unconditional rate originally agreed upon. Defendant was then free to accept this amendment, or to ship its logs otherwise over plaintiff's line under the rates which the Commission had fixed. See Armour Packing Co. v. United States, supra, and the authorites therein cited.

As a matter of fact, there is no equity in plaintiff's demands. After the 1st of August, 1917, defendant shipped an average of more than 200 cars of logs per month over plaintiff's line, at much higher rates, and the claim in this case rests strictly upon an alleged technical violation of the original contract.

In view of the conclusion above reached, we do not find it necessary to go into the other defenses urged by defendant. Our opinion is that the judgment of the lower court is correct, and it is accordingly affirmed, at the cost of the appellant.

O'NIELL and OVERTON, JJ., are recused.