BOUTALL, Judge.
This is a suit by plaintiff, Jerry Katz, d/b/a Jerry’s Construction Company, owner of and general contractor for a proposed apartment building, against subcontractor Joseph Judice, Jr., d/b/a Air Tex Engineering Company, and his assignee under the subcontract, Lennox Industries, Inc. The petition recites that the defendant Judice was to install certain heating and air-conditioning equipment in the apartment building under construction in accordance with a written contract for the contract price of $4,870.00. The petition alleges that the defendants have failed to perform in accordance with the contract and as a result another contractor was called in to complete the contract, causing a loss of $2,403.10, in additional charges. Plaintiff sues for this sum plus an additional $10,200.00 in lost rentals due to delay in completion. The trial court rendered a judgment in favor of the defendants and dismissed plaintiff’s suit at his costs. From this judgment he takes the present appeal.
The basic defense of the defendants is that the contract consisted of two parts, first, a “rough-in” procedure, which, when completed, called for payment of 50% of the contract price, and then the finishing procedure, after which the balance of the price was to be paid. The defendants insist that they proceeded to do the work as called for in the contract and had completed the rough-in at which time it was discovered that there was no building permit for the plans and specifications as provided for in the written contract between plaintiff and defendants, but instead approval had been obtained from the City of New Orleans, Division of Regulatory Inspection, for the installation of a different type system. Because of this, work was stopped on the job and the defendants were prevented from completing the contract. When these difficulties with the regulatory agency were settled, plaintiff had hired a third party contractor to finish the job, although defendants stood ready, willing, and able to do so.
The trial judge, in his Reasons for Judgment, found that the defendants were indeed prevented from completing the job, and rendered judgment in their favor. He found that the work that had been done already by the defendants was proper, but that the trouble started when the city inspectors found that the original plan which has been approved called for an entirely different system of heating. The situation then was such that either the plans had to be changed to the actual installation to meet city approval, or the entire work had to be taken out and started *534 all over in order to put in the electrical heating system called for in the original plans. The trial judge concluded that there was no showing by the plaintiff that the defendants were at fault for the difference in plans, and, in fact, it appeared to the trial judge that the plaintiff had much, if not most, of the fault in the misunderstanding that resulted in his financial loss.
An examination of the record reveals that under the written contract between the parties, the defendants were to furnish and install an electrical air-conditioning system and a gas heating system at the premise in question. However, the original plans prepared by the architect and submitted to the City of New Orleans, Division of Regulatory Inspection, for approval called for all-electric air-conditioning and heating systems. All of the testimony is to the effect that the defendants were not furnished with the original plans, and had no way of knowing that there was this difference in the heating system. The defendants began work in accordance with the specifications in their contract, and had completed their obligation to rough-in the two systems, and in accordance with their contract requested payment of half of the contract price, which was promptly paid. The equipment necessary to complete the job was ordered from the defendant Len-nox at that time, and was delivered to the job site to await completion of the contract. At this time, or shortly thereafter, the defendants were notified that there was something wrong with the installation and that it did not meet with the approval of the city inspectors. The installation job was then stopped by the Division of Regulatory Inspection. It is at this point that much of the conflict in the testimony begins.
The plaintiff, Mr. Katz, testified that he had attempted to contact the defendants on numerous occasions in an attempt to induce Justice and his workmen to return and complete the job, and, on at least one occasion, even told Judice that the job had now been reopened by the City, although it was later determined by the defendants that the job still had not been reopened. The testimony of the plaintiff is to the effect that much of the work that had been done by the defendants was improper and that was the reason for the difficulty on the job. However, this contention is not borne out by the testimony of the other witnesses. In fact, the testimony of the inspectors for the City of New Orleans shows that the contrary is true. A consideration of all of the testimony involved leads the court to the inescapable conclusion that the job was stopped by the city inspectors because it was not being done in accordance with the plans that had been submitted along with the initial application for a building permit.
Mr. Judice, in his testimony, insisted that the work was being done properly under the contract, and that there were arguments over certain errors in the plumbing, which was not his responsibility, but that of another subcontractor. The evidence presented bears out this contention. The city inspectors testified that basically there was nothing wrong with the installation as it was, except that it did not comply with the approved plans. There were violations of the building code in connection with the installation of gas lines, but this was the plumber’s responsibility and not the responsibility of the air-conditioning and heating contractor.
Mr. Lopez, who handled the completion of the job for Bann-Schumert, testified that there was nothing wrong with the installation as it existed at the time that they began to work on it, but rather that other things had to be done to bring the job to the condition which he considered to be the completion of the rough-in. An examination of his testimony reveals that the only problem which appeared to have arisen because of faulty work by the defendants was a gap above the air-conditioning coils where the equipment attaches to the duct work, and that it was necessary to fill in this space, a distance of approximately four (4) inches on each machine. How *535 ever, he could not testify that this space was left as a result of improper work by defendants and admitted that it could very well have happened as a result of other work done by other subcontractors on the job. He testified that the expenses of additional work to be done to justify the rough-in consisted of connecting this duct work, relocating some gas piping, running some copper tubing and drain lines, installing vents and several other minor items. However, he further testified that a number of these items were work which should properly have been done by the plumber and not by the installer of the air-conditioning and heating equipment, and, further, that others of these items are generally done by the contractor as he proceeds along to completion of the job.
It appears from the testimony of this witness and others, that the term “rough-in” does not have any precise meaning but means somthing slightly different to each person in the trade, and that there is no requirement in the city building code which details the stage of completion designated. Additionally, Mr. Lopez testified that a number of the things that Bann-Schumert did were not ordinarily done by the heating contractor but he did them on a time and material basis to help complete the job. They were necessary because the city inspectors had stopped the job and he had to do them in order to bring the installation up to such condition so that the city inspectors would approve it.
It is obvious from the testimony of Mr. Bergeron, the architect, and Mr. Alba, the mechanical engineer, that the main problem which arose in this case is the different heating system in the original plan prepared by Mr. Bergeron as opposed to the specifications in the contract entered into between plaintiff and defendants. In order to change the plan of Mr. Bergeron from all-electric air-conditioning and heating system, to electric air-conditioning and gas heating as proposed by Mr. Katz, it was necessary that Mr. Alba change the mechanical sheets of the original documents and in this connection, it appears at among other things, the following changes had to be made. There was a change in the layout of the typical sections through the air-handling unit rooms, a change in the specifications of electrical units to gas units, a complete change in the gas distribution system, including increasing the size of the gas meter and gas pipes, and the location of the pipes, together with the corresponding changes in the electrical distribution system. Until all of these changes were made and submitted to the City of New Orleans, Division of Regulatory Inspection, the contract could not move forward to completion.
It is obvious that during this period of time the defendants could not move forward with their job because they could not get approval of the Division of Regulatory Inspection until such time as there was a change in the plans, and this change was, of course, dependent upon the owner. This change did not take place until sometime during the first week in July. By this time, Mr. Katz had already entered into an agreement with Bann-Schumert for their services, and had apparently dismissed the defendants from the job. It appears that although he made numerous telephone calls in an effort to get the defendants to proceed, he had never placed the defendants formally in default.
It is to be noted that during all of this time, the defendant Judice was placed in a very untenable position. He was stopped by the city inspectors from proceeding under contract with the owner, and, if he tried to proceed, he faced the possibility that the city would invoke penalties against him under the building code, or, would not approve his plans or construction, and then the owner would refuse to pay or possibly seek damages against him. On the other hand, if he stopped work and attempted to proceed under the original architectual plans, for which the building permit had been obtained, then obviously he was not complying with the contract that he entered into with the owner. In either event *536 he was faced with the prospect that whatever work he did would be subject to disapproval by the city or by the owner or both. He did the only thing that logic dictated he should do, and that is, stop work until the owner had the original plans changed to conform with the specifications that he contracted for.
In this connection we refer to LSA-R.S. 9:2771, which reads as follows:
“No contractor shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor. Acts 1958, No. 183, § 1, as amended Acts 1960, No. 84, §1.”
The contractor who enters into a contract for construction in accordance with the plans and specifications furnished to him by the owner cannot be held to warrant the sufficiency of the plans and specifications, but he may rely upon such as is furnished by the owner and his only obligation is that he perform in accordance with those plans and specifications. See Sisters of the Good Shepherd v. Quinn Const. Co., 225 So.2d 225 (La.App. 4th Cir. 1969); Pittman Construction Co. v. City of New Orleans, 178 So.2d 312 (La.App. 4th Cir. 1965) (writ refused). In such a situation, where the plans and specifications are erroneous and do not comply with the city regulatory laws, it is obvious that it is the action of the owner which prevents the performance under the contract, and the owner must be held responsible for the damages which occur as a result thereof.
The law which governs this situation is found in the Louisiana Civil Code. Plaintiff’s suit is, of course, based upon LSA-C.C. art. 1930, which reads as follows :
“The obligations of contract [contracts] extending to whatsoever is incident to such contracts, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default.”
From an examination of the evidence hereinabove referred to, it is obvious that the failure of the defendants to perform after the completion of the rough-in would constitute a passive violation of the contract. However, there are certain recognized exceptions set out in the law which are of concern here, and which are relied upon in defense. The first of these is LSA-C.C. art. 1933, which reads in part:
“When the breach has been passive only, damages are due from the time that the debtor has been put in default, in the manner directed in this chapter.”
Next is article 1934, which reads in part:
“Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:
% ‡
(4) If the creditor be guilty of any bad faith, which retards or prevents the execution of the contract, or if, at the time of making it, he knew of any facts that *537 must prevent or delay its performance, and concealed them from the debtor, he is not entitled to damages.”
Referring again to the evidence in the record, it is obvious that the plaintiff knew, or should have known, that there was a difference in the original installations as proposed by the architect, and the installations for which he contracted with the defendants. The plaintiff, being both the owner of the proposed building and the general contractor, entered into all of the arrangements and agreements with the architect and certainly had cognizance of what was in the architect’s plans. For his own purposes, the exact reason not being explained in the record, he decided to change those plans and entered into a different contract with the defendants. He certainly must have known that when the Division of Regulatory Inspection made its examination of the actual construction, that it would discover that the actual construction was not in accordance with the proposed construction for which the building permit was issued. Clearly then, he comes under the provisions of LSA-C.C. art. 1934 (4) wherein he knew of facts which must prevent or delay the performance of the contract and did not inform the subcontractor of these facts. Although it was plaintiff’s action that was retarding or preventing the execution of the contract, he made repeated requests for Judice to proceed, but there was no way in which he could proceed, until he had satisfied both the plaintiff and the regulatory agency.
After a period of several months, the plaintiff finally decided that he would have a mechanical engineer change the plans to conform in general to the contract as entered into by plaintiff and Judice, and it was not until this time that Judice was able to proceed with the installation in any way. However, by this time the owner had already contacted Bann-Schumert Company and has entered into an agreement with that company to go ahead and complete the contract. He did this without putting the defendants in formal default and thus effectively prevented the defendants from proceeding to a conclusion under their contract.
We are of the opinion that the above recited actions of the plaintiff certainly fall within the exceptions and modifications of LSA-C.C. art. 1934(4). We feel that his actions in requiring a contract with specifications different from the plans upon which the building permit was obtained, and his failure to charge the requirements of the original plans to conform with the contract in question so that a valid permit could be obtained to complete the work, constitutes a failure to provide the condition precedent necessary to complete the work.
We refer in this regard to the case of Popich v. Fidelity and Deposit Company of Maryland, 231 So.2d 604 (La.App. 4th Cir. 1970) (writ issued on another point, 256 La. 63, 235 So.2d 94). In that case the owner specified a particular type of brick, and when the brick was delivered, the owner was dissatisfied and requested a different type of brick be substituted. The court held that there was no showing that the first brick delivered failed to meet specifications or was at variance from the selection initially made and that the delay in completion of the contract complained of was occasioned by the owner’s rejection and reorder of the brick. We held in that case:
“ * * * Regardless of the reason for their rejection and substitution of another type of brick, we must hold that they cannot recover damages on account of the delay caused by the substitution through no fault of the ‘ contractor. Farnsworth v. Sewerage & Water Board of New Orleans, 173 La. 1105, 139 So. 638 (1932). * * *” 231 So.2d at 613.
The Supreme Court of Louisiana in the case entitled Alexandria & Western Rail *538 way Company v. Long Pine Lumber Company of Louisiana, Inc., 152 La. 399, 93 So. 199, 200 (1922) had this to say:
“It is well settled that one party to a contract cannot add more onerous conditions thereto without the consent of the other; nor can one exact of the other performance when he himself cannot perform. * * * ”
Again, in the case entitled Blodgett Construction Company v. Board of Commissioners of Caddo Levee District, 153 La. 623, 96 So. 281, 285 (1923), the court stated:
“It is elemental that one seeking damages for the violation of a contract must allege and prove that he carried out all of the obligations resting on him before he can recover. * * * ”
In the present case it would appear that the actions of the plaintiff in creating the situation which originally delayed performance on the job and then hiring another contractor to complete the job would come within the principles of the case of Niblett Farms v. Markley-Bankhead, 202 La. 982, 13 So.2d 287 (1943). In holding in that case that an assignment of the contract by the original parties to some third parties prevented the original contractor from performing, the court quoted from the syllabus of People’s Bank v. Cage, 40 La.Ann. 138, 3 So. 721 (1888):
“Every obligation is the correlative of a corresponding right, and when the right is destroyed the obligation is equally extinguished.”
For the reasons assigned, we are of the opinion that the judgment of the trial court dismissing plaintiff’s suit should be affirmed. Costs of this appeal are assessed against appellant.
Affirmed.