282 So.2d 440 (1973)
CITY OF PLAQUEMINE, Louisiana, Plaintiff-Appellant,
v.
LOUISIANA PUBLIC SERVICE COMMISSION, Defendant-Appellee.
No. 52926.
Supreme Court of Louisiana.
August 20, 1973.
Rehearing Denied September 24, 1973.
*441 Sanders, Miller, Downing & Kean, R. Gordon Kean, Jr., Charles S. McCowan, Jr., Baton Rouge, Dupont & Dupont, Joseph B. Dupont, Plaquemine, for plaintiffappellant.
Marshall B. Brinkley, Taylor, Porter, Brooks & Phillips, Tom F. Phillips, Eugene R. Groves, Baton Rouge, for defendant-intervenor-appellee.
CALOGERO, Justice.
The sole issue involved in this appeal is whether the Louisiana Public Service Commission had jurisdiction to issue its Order # 10829 increasing the price of natural gas sold and delivered to the City of Plaquemine by Sugar Bowl Gas Corporation, a common carrier pipeline company engaged in the sale and delivery of natural gas in this State.
The Commission, believing that it had such jurisdiction, issued the disputed order. The trial judge, holding that the Commission had such jurisdiction, dismissed the City's rule for preliminary injunction and set aside an ex parte restraining order.
We hold that the Commission has jurisdiction in this matter and affirm the judgment of the trial court.[1]
In 1967 the City of Plaquemine and Sugar Bowl Gas Corporation entered into a 10 year written contract for the purchase, and sale, of natural gas at a stipulated price of 24.4 cents for each 1,000 cubic feet of gas, or MCF; sold and delivered. The gas sales contract, filed with the Louisiana Public Service Commission contained the following provision:
"Art. XVI. This agreement is subject to all present and future valid laws, orders, rules and regulations of any state, federal or other governmental authority having jurisdiction."
The City of Plaquemine operates a natural gas distribution system for the sale of gas at retail as well as a multi-fuel electric generating facility for the production of electricity for sale at retail to residents of the City.
The gas purchased under the contract is delivered by Sugar Bowl to the City at a single metering point on a pipeline owned by the City. It is taken by the City's gas utility department and the use is thereafter allocated between the gas distribution department and the electric department in quantities necessary to meet the demands of each. Sugar Bowl exercised no control over the allocation and submitted only one bill for the natural gas. The allocation is unilaterally controlled by the City. The *442 portion utilized in the generation of electricity was substantially increased to accommodate a new plant sometime after the contract went into effect, although construction of this plant was contemplated at the time of execution of the contract. Ratio of usage fluctuated daily and seasonally, with gas distribution predominating in the heating months and use for generation of electricity predominating in the air conditioning season. While not significant for our consideration, over a period of time perhaps one-half of the gas was used for each purpose.
As a matter of internal operation, the City of Plaquemine meters the gas used by its electric utility department and there is an accounting charge of the cost of this gas made by the gas utility department, to the electric utility department. The portion of the purchased gas not metered to the electric department, but rather used by the gas department is passed along to the municipality's gas customers as a part of their billings.
Absent some prohibition the Louisiana Public Service Commission has continuing authority with respect to rates for the sale of natural gas, covered by a long term contract. We have consistently held that contracts entered into between a public utility and its customers are subject to regulatory authority and their terms and conditions with respect to rates are subject to supervision and adjustment by the Commission upon application of either party thereto. Alexandria & W. Ry. Co. v. Long Pine Lumber Co., 152 La. 399, 93 So. 199 (1922); City of Shreveport v. Southwestern Gas & Electric Co., 151 La. 864, 92 So. 365 (1922).
The sole question before us is whether this contract is one beyond the jurisdictional authority of the Louisiana Public Service Commission.
The objections or arguments put forth by the City, in an ascending order of seriousness, as we understand the issues, are:
1. The Commission's action in increasing the rate serves no public interest, but rather simply the private interest of Sugar Bowl.
2. RS 33:4256 and RS 45:1164 give the City of Plaquemine exclusive jurisdiction over its municipal utility systems, including the exclusive right and authority to contract for its fuel supply, and the Commission has no jurisdiction to exercise authority over that contract, and therefore indirectly, the system it supplies.
3. Art. XIV, Sec. 14(m) of the Louisiana Constitution as implemented by RS 33:4163 permits municipalities (and other political subdivisions of this State) to issue utility revenue bonds and secure the bonds with a pledge of income and revenue derived from operations of municipally owned facilities. The City of Plaquemine has utilized this authority to issue approximately $4,000,000 of utility revenue bonds based upon a feasibility report that predicated revenues on a fixed rate for gas to be purchased by City. These Constitutional and statutory provisions must therefore surely have intended that there would be no authority in the Louisiana Public Service Commission or any other regulatory agency to cause an increase in the cost of gas sold to the municipal system, thereby possibly adversely affecting the soundness of the issued revenue bonds.
4. Art. VI, Section 4 of the Louisiana Constitution exempts from regulation by the Commission "sales of natural gas direct to industrial users for fuel or for utilization in any manufacturing process."
The City's argument noted at (1) above, that this rate increase serves no public interest, but only the private interest of Sugar Bowl, is perhaps most easily disposed of. The entire regulatory scheme, *443 including increases as well as decreases in rates, is indeed in the public interest, designed to assure the furnishing of adequate service to all public utility patrons at the lowest reasonable rates consistent with the interest both of the public and of the utilities.
Thus the public interest necessity in utility regulation is not offended, but rather served by reasonable and proper rate increases notwithstanding that an immediate and incidental effect of any increase is improvement in the economic condition of the regulated utility company.
City's reliance upon RS 33:4256 and RS 45:1164[2] is likewise not well founded. These statutes bar Commission regulation of municipally owned utilities with respect to the municipality's fees and charges (to its customers) and with respect to services "to be given or rendered by such public utilities". They do not, and indeed could not, affect the Commission's Constitutional power and authority "to supervise, govern, regulate, and control all common carrier pipelines. . . and other public utilities. . . and to fix reasonable and just. . . rates . . . for the commodities furnished. . . by such common carriers or public utilities . . ."[3]
In other words, regulating the common carrier pipeline and thus the rates they charge a municipality which operates a distributing system is not regulating the municipality, regarding services given or rendered by such municipality, even though the price paid by the municipality for purchased gas has a very real effect upon the price ultimately to be paid by the municipality's customers.
Nor are RS 33:4256 and RS 45:1164 inconsistent with the provisions of RS 45:301 and 302,[4] which, implementing *444 Art. VI, Sec. 4, clearly grants the Commission jurisdiction over all pipeline sales of natural gas for resale.
This argument of the City was similarly disposed of in United Gas Pipeline Co, v. Town of Washington, 143 So.2d 613 (La. App. 3rd Cir. 1962).
The City's third argument noted above, in our view, has no merit.
Admittedly, a utility system constructed and operated under Art. XIV, Sec. 14(m) of the Louisiana Constitution, with its attendant revenue financing, is not subject to the jurisdiction of the Louisiana Public Service Commission. The authority conferred upon the Commission by the Constitution and specifically by RS 45:1163[5] over local public utilities is restricted by RS 45:1164 so as not to apply to any public utility owned and operated by a municipality (or other political subdivision of the State). Consequently, the Commission may not fix or regulate the rates charged or to be charged by, and service furnished by, a municipally owned utility.
It is entirely another matter however to argue from this premise that because the Commission cannot regulate the municipal utility's rates charged its customers that the Commission may not indirectly affect those rates by exercising its Constitutional authority and direction to regulate the rates charged by a common carrier gas pipeline company to its customers, including municipally owned and operated utility companies.
Arguing that the price of gas purchased by the City cannot be increased by the Commission because such increase can adversely affect the City's net revenues from operation of its electric and gas utility company is no more logical (although perhaps more directly pertinent) than arguing that general inflationary cost increases in the private sector of our nation's economy should be barred by the identical Constitutional provisions (authorizing issuance of revenue bonds) since such cost increases will likely affect net revenues contrary to feasibility reports predicating revenues on static, or moderately increasing costs.
There is no Constitutional or statutory support for this contention.
City's main argument is that the contract between the City and Sugar Bowl is exempt from Commission regulation by virtue of Art. VI, Section 4 of the Louisiana Constitution as it involves a direct sale of natural gas to an industrial user for fuel, and the gas is also used in a manufacturing process.[6] Acknowledging that only a portion of the gas purchased is used by City in the manufacture or generation of electricity, City argues that if a portion of the gas purchase is exempt, then the entire gas purchase is exempt, and alternatively that, at worse, Commission jurisdiction extends only to that portion of the gas which *445 is purchased for resale and not to that portion purchased for use as fuel to generate electricity.
While not dispositive of the jurisdictional issue before us, as will be seen from our discussion hereinbelow, we are constrained to find that the exemption from Commission jurisdiction of direct sales of natural gas to an industrial user for fuel or for utilization in a manufacturing process does apply to a sale by Sugar Bowl to the City of Plaquemine. The principle reason for passage of this 1964 Constitutional Amendment exempting industrial sales of natural gas may well have been, as contended by Sugar Bowl and the Commission, to encourage location or relocation of "industries" within this State. Nonetheless, the plain and unambiguous language of the Article applies to sales to purchasers who employ it for fuel or for utilization in any manufacturing process, irrespective of whether that purchaser would customarily and generally be recognized or designated as an "industry". A municipality engaged in the manufacture or generation of electricity is no less a manufacturer simply because it is a municipality. The City of Plaquemine is no less an industrial user of natural gas, which they employ in their electric generating plants, because it is a City, whose chief purpose for existence is governmental.
Thus, if the exclusive use of the purchased gas were as fuel for electric generation we would find such sale exempt from Commission jurisdiction under the provisions of Art. VI, Sec. 4 of the Louisiana Constitution.
However, such is not the case. A substantial portion of the gas purchased by City from Sugar Bowl (perhaps ½) is for the purpose of resale to City's gas customers. This portion of the purchase is clearly within the jurisdiction of the Commission. Art. VI, Sec. 4, Louisiana Constitution; RS 45:301.
We have then a situation where there is a single contract, a single sale, of natural gas by a common carrier pipeline company to its customer (a municipality) which, after receipt, employs such gas, in fluctuating amounts, for resale (clearly jurisdictional) and for industrial use (nonjurisdictional).
Three possible means of resolving this problem are presented us by the parties:
1) Since the contract may be exempt for one purpose (industrial use) it should be entirely exempt from regulation by the Commission, or
2) The Commission's jurisdiction should extend only to the non-exempt portion of the contract (the gas purchased and resold), or
3) Since the contract is jurisdictional in part (the sale for resale) the entire contract is therefore jurisdictional.
To adopt the first alternate possibility, exempting the entire contract because a portion of the gas is sold for industrial use would not only defeat the regulatory scheme but it would violate the Constitutional directives to, and authority of, the Louisiana Public Service Commission.
Our choice then must be between the second and third alternatives. We must either hold the entire contract jurisdictional or in some fashion afford the Commission jurisdiction of only a portion of the contract, a portion of the involved natural gas sale.
Pertinent to our consideration of this problem are the facts that:
a) there is here involved a single contract
b) the gas sold is at no time prior to delivery segregated for its dual use by City
c) while it might be construed that there are successive deliveries (rather than *446 continuous delivery), each such delivery by Sugar Bowl is of an unsegregated unit of gas, and
d) the contract itself provides no separate rates, nor were there any separate negotiations in confection of the contract.
Accordingly, we can perceive only a single sale of natural gas. That sale must either be regulated by the Commission, or unregulated. Since Art. VI, Sec. 4 of the Louisiana Constitution requires regulation of a sale of natural gas by a common carrier pipeline company to a distributing system of natural gas destined for resale, we conclude that the Commission has jurisdiction over the involved contract. This must be so notwithstanding that a portion of the gas sold would not be subject to Commission regulation if it were being sold in a distinctly separate transaction.
While not controlling upon this Court in its interpretation of Louisiana Constitutional and statutory provisions it should be noted that a similar result was reached by the United States Supreme Court in United States v. Public Utilities Commission of California, 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020 (1953),[7] a case involving jurisdiction of the Federal Power Commission over an apparent single interstate sale of electric power for dual use. In that instance, somewhat comparable to the instant case, the commingled power was for resale (FPC jurisdictional) and for consumption by the purchaser-distributor (FPC non-jurisdictional).
Defendants Sugar Bowl Gas Corporation and the Louisiana Public Service Commission had raised a threshold procedural question in the District Court (and renewed it here) relative to the availability to City of injunctive relief from the Commission's rate order, taking issue with City's being able to show irreparable harm.
Because of our resolution of the merit of this controversy, in finding jurisdiction in the Louisiana Public Service Commission, defendants have no need for relief of a procedural nature and we need not consider the question.
For the foregoing reasons the judgment of the district court is affirmed.
SUMMERS, J., dissents and will assign reasons.
SUMMERS, Justice (dissenting).
I cannot agree that the ratio of gas used is not a significant factor which the Court should consider. To the contrary, the finding, with which I agree, that over a period of time one-half of the gas was used for distribution to customers and one-half was used for generation of electricity appears indispensable to a proper adjudication of the principal issue before the Courtthe jurisdiction of the Louisiana Public Service Commission to increase the price of all natural gas delivered to the city of Plaquemine by Sugar Bowl Gas Corporation.
The City's contention that the contract between the City and Sugar Bowl is exempt from Commission regulation by virtue of Article VI, Section 4, of the Constitution has merit. It involves a direct sale of natural gas to an industrial user for fuel, and the gas is also used in a manufacturing process. In this respect the majority opinion upholds the City's contention, for the majority finds that the exemption from Commission jurisdiction of direct sales of natural gas to an industrial user for fuel or for utilization in a manufacturing process does apply to a sale by Sugar Bowl to the City. I thoroughly agree with the clear reasons expressed in the majority opinion to support this finding.
*447 What I find unacceptable and unsupported by principles which should be applicable to such a case, however, is the majority's treatment of the alternatives the situation presents. Where the gas involved is used one-half for resale (jurisdictional) and one-half for industrial use (nonjurisdictional) the result should not be to confer unlimited jurisdiction on the Commission of the entire gas contract, notwithstanding the fact that only one contract is involved.
A public service commission has no inherent power; all its power, jurisdiction and authority, and the nature and extent thereof, must be found within the statutory or constitutional provisions which create it. Strictly speaking, a public service commission is an administrative body only, and not a court, and hence courts hold that it has no power to exercise or perform a judicial function, to declare or enforce any principle of law or equity or otherwise enlarge upon the authority conferred. 64 AmJur., Public Utilities, § 232.
Thus, if the "industrial user" status of the City with respect to one-half of the gas deprives the Commission of the authority to regulate that portion of the gas consumed by the City, it was incumbent upon the Commission to establish the ratio of these separate uses (one-half to each is accepted for this consideration) and to exercise jurisdiction of that portion dedicated to resale and deny jurisdiction over the balance dedicated to industrial uses. The end result of this rationale would be to permit the Commission to regulate rates only of gas resold by the City.
A case decided by this Court in 1952 is appropriate here. In Gulf States Utilities Co. v. Louisiana Public Service Commission, 222 La. 132, 62 So.2d 250, the Court was faced with the necessity of determining whether a particular portion of an electric public utility company's business had become a public utility and subject to regulation. There it was found that the electric company furnishing services to two refineries in connection with its steamelectric business was a private enterprise separate and apart from the normal utility service it rendered to the public. Accordingly, we decided the Commission had no power over private pursuits in which a public utility may become engaged when it is authorized to do so by its charter.
As a result of this determination, we held then that the private enterprise portion of the utility income could not be considered in calculating the rates on the portion of the utilities' activities which were subject to regulation, thereby demonstrating unmistakably the feasibility and authority for a similar result in the case at bar.
As the United States Supreme Court made clear in Panhandle Eastern Pipeline Co. v. Federal Power Commission, 324 U. S. 635, 65 S.Ct. 821, 89 L.Ed. 1241 (1945);
We agree that the Commission must make a separation of the regulated and unregulated business when it fixes the interstate wholesale rates of a company whose activities embrace both. Otherwise, the profits or losses, as the case may be, of the unregulated business would be assigned to the regulated business and the Commission would trangress the jurisdictional lines which Congress wrote into the Act.
The same principle applies here. As the majority properly recognizes, the sole issue is the jurisdiction of the Commission. And when the result here is considered, it must be conceded that the majority decree permits regulation of the industrial uses the City makes of one-half of the gas. In doing so the Commission, with this Court's sanction, transgresses the jurisdictional lines fixed by Article VI, Section 4, of the Constitution. Detailed separation studies should have been conducted to ascertain the ratio of the two uses to which the gas was put and jurisdiction exercised and denied accordingly. The authority cited by the majority to support its position does not apply.
I respectfully dissent.
NOTES
[1] The merit of the Commission's action in allowing Sugar Bowl an increase in rates is not before us.
[2] RS 33:4256. Charges for commodities or services provided by utility

When any municipality has issued bonds and has pledged the revenues of any utility for the payment thereof as herein provided, the municipality shall impose and collect fees and charges for the products, commodities and services furnished by the utility, including those furnished to the municipality itself and its various agencies and departments, in such amounts and at such rates as shall be fully sufficient at all times to (1) pay the expenses of operating and maintaining the utility, (2) provide a sinking fund sufficient to assure the prompt payment of principal of and interest on the bonds as each falls due, (3) provide such reasonable fund for contingencies as may be required by the resolution authorizing the bonds, and (4) provide an adequate depreciation fund for repairs, extensions and improvements to the utility necessary to assure adequate and efficient service to the public. No board or commission other than the governing body of the municipality shall have authority to fix or supervise the making of these fees and charges.
RS 45:1164. Extent of power as to service; exception
The power, authority, and duties of the commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by such public utilities.
The provisions of this Section and R.S. 45:1163 shall not apply to any public utility, the title to which is in the state or any of its political subdivisions or municipalities.
[3] Art. VI, Section 4, Louisiana Constitution 1921.
[4] RS 45:301. Pipe lines; gas; affected with a public interest

The transportation or sale of natural gas by pipe lines to local distributing systems for resale is affected with a public interest and such pipe lines, appurtenances and facilities to the extent of such transportation or sales are public utilities subject to the jurisdiction of the Louisiana Public Service Commission. RS 45:302. Powers of the Commission; scope
The Commission shall supervise, govern, regulate and control the transportation or sale of natural gas moving by pipe line to local distributing systems for resale for the purpose of fixing and regulating the rates charged and the service furnished by such public utilities in connection with such transportation or sale.
The power, authority and duties of the commission shall affect and include all matters and things directly connected with, concerning and growing out of the service given or rendered by such pipe lines transporting or selling natural gas to local distributing systems for resale with respect to any such transportation or sales.
[5] RS 45 § 1163. Power to regulate rates and service

The commission shall exercise all necessary power and authority over any street railway, gas, electric light, heat, power, water works, or other local public utility for the purpose of fixing and regulating the rates charged or to be charged by and service furnished by such public utilities; provided, however, that no aspect of direct sales of natural gas by natural gas producers, natural gas pipeline companies, natural gas distribution companies or any other person engaging in the direct sale of natural gas to industrial users for fuel or for utilization in any manufacturing process, shall be subject to such regulation by the commission. As amended Acts 1964, No. 446, § 1.
[6] Art. VI, Sec. 4, La.Const.

". . . it is further provided, however, that the Commission shall have no power or authority to supervise, govern, regulate, and control any aspect of sales of natural gas direct to industrial users for fuel or for utilization in any manufacturing process, whether such direct sales are made by natural gas producers, natural gas pipeline companies, natural gas distribution companies, or any other person engaging in such sale of natural gas ... "
". . . provided, however, that the power and authority of the Commission shall not extend to any aspect of direct sales of natural gas to industrial users for fuel or for utilization in any manufacturing process..."
[7] Actually the case was remanded for a determination as to whether there was in fact a single sale of power.