452 So.2d 810 (1984)
CHRYSLER CREDIT CORPORATION (M & M Dodge, Inc., Assignee), Plaintiff-Appellant,
v.
Eugene BROWN, Defendant-Appellee.
No. 83-714.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1984.
*811 Pharis & Pharis, James A. Pharis, Jr., Alexandria, for plaintiff-appellant.
Thomas G. Wilson, Colfax, for defendantappellee.
Before CUTRER, DOUCET and YELVERTON, JJ.
CUTRER, Judge.
This is an appeal by a creditor from a trial court judgment denying the creditor's demand against its debtor for a deficiency judgment. The creditor, M & M Dodge, Inc. (M & M), is the assignee of the original plaintiff, Chrysler Credit Corporation (Chrysler), which financed a pickup truck purchased by the debtor/defendant, Eugene Brown (Brown). Chrysler was the holder of a promissory note, secured by a chattel mortgage on the truck purchased by Brown. After a dispute between Brown and Chrysler over an increase in the monthly mortgage notes, Brown ceased making monthly payments. Several months later, Chrysler petitioned for and was granted executory process on the truck, resulting in its seizure and sale. Brown did not contest this action. Subsequently, Chrysler assigned its rights to M & M which brought the present action for a deficiency judgment, seeking the difference between the principal amount owed by Brown and the amount received from the judicial sale of the truck.
In denying the creditor's claim for a deficiency judgment, the trial judge held that the mortgagee improperly raised Brown's monthly notes and M & M was, therefore, precluded from seeking a deficiency judgment. M & M has appealed. For the reasons to follow, we reverse.

FACTS
The facts are basically undisputed. In July 1980, Brown purchased a new 1980 Dodge pickup truck from M & M Dodge in Alexandria. The major portion of the purchase price and other charges was financed by M & M which received a promissory note from Brown in the amount of $5,993.28. This note was secured by a chattel mortgage in favor of M & M and Brown was to repay the loan at a rate of $166.48 per month for thirty-six months. The note and mortgage were subsequently assigned to the Chrysler Credit Corporation by M & M. The mortgage contains a confession of judgment by the debtor and allows the creditor to proceed by executory process should the debtor default on the conditions of the mortgage. Any default by the debtor would cause the entire balance to become immediately due. The debtor (Brown), in the event of execution by the creditor, also obligated himself to the payment of attorney's fees to Chrysler in the amount of twenty-five percent of the balance owed.
The mortgage agreement contained a provision which required Brown to purchase collision insurance to protect the mortgagee's interests and to deliver the insurance policy to the mortgagee. Further, the mortgagee was allowed to purchase insurance coverage and to add the cost of that coverage to Brown's payments if Brown failed to acquire the necessary insurance or if he failed "to furnish satisfactory evidence thereof upon request."
Brown's insurance agent sent Chrysler (as mortgagee and holder of the promissory note) a memorandum copy of the insurance policy obtained by Brown when he purchased the truck. That policy was effective until November 7, 1980. Through the same insurance agency, Brown purchased another insurance policy effective from November 7, 1980 to November 7, 1981. Chrysler was properly listed as payee under the terms of the insurance policy. However, Chrysler was not sent that policy or any other physical evidence of the policy's existence.
In April 1981, because of Brown's delinquency in making his payments, the truck was first seized by Chrysler. Arrangements *812 between the parties resulted in the truck's return to Brown shortly thereafter.
In July 1981, Kent Wilkes, a collection supervisor for Chrysler, spoke with Brown via telephone and informed him that Chrysler had not received a copy of the required insurance coverage. Chrysler's records only reflected the first policy, which had expired on November 7, 1980. When Brown informed Wilkes that he had acquired insurance, Wilkes requested Brown to send Chrysler a copy of the policy. Apparently, Brown also received a letter from Chrysler requesting a copy of the insurance policy. Chrysler never received a copy of this policy.
Testimony by Brown corroborated Wilkes'; the following dialogue transpired during the cross-examination of Brown:
"Q. Did you send him a policy?
"A. He asked for one and I told him I would give him the policy and the policy number. That policy number was taken from right that policy right here.
"Q. Did you ever send him the policy?
"A. I did not send him this policy.
"Q. Did you ever send him any policy?
"A. I didn't send him no policy.
"Q. Did you ever request your insurance agency to send a memorandum policy or a copy of a policy to Chrysler Credit Corporation?
"A. Yes, sir.
"Q. Do you know if they did?
"A. I don't know as a fact I wasn't there.
"Q. Matter of fact Chrysler Credit told you they didn't have a current policy or a policy that was in force, did they not?
"A. They told me that yes."
Failing to receive evidence of the insurance coverage claimed by Brown to be in effect, Chrysler, under the provisions of the mortgage, purchased the necessary insurance. Brown was notified of this action by a letter dated July 30, 1981, and, in August, he received new payment coupons indicating that his monthly payments were increased from $166.48 to $173.02 (a $6.54 increase) to cover the insurance premium.
Payments of $166.48 were made by Brown through September 1981. Brown refused to pay the new amount of $173.02 and stopped all of his payments entirely. Therefore, the last payment made to Chrysler by Brown was for the amount due September 25, 1981. Brown made no attempt to tender any further amounts to Chrysler.
On February 17, 1982, Chrysler filed a petition for executory process, because of Brown's failure to pay his notes, claiming an amount due of $3,847.01 plus attorney's fees of $961.75 (twenty-five percent of the principal), a total of $4,808.76. After Chrysler complied with the formalities of LSA-C.C.P. art. 2635, a writ of seizure and sale of the truck was granted, recognizing Chrysler's claim to $4,808.76. The truck was seized on April 28, 1982, and was formally appraised as having a value of $2,800.00. Brown was timely served notice of the seizure but made no objections to the sale, either by injunction or suspensive appeal. See LSA-C.C.P. art. 2642.
At the subsequent judicial sale (held after appropriate delays and advertisements), Chrysler purchased the truck at its first offering for $1,867.00, two-thirds of the appraised value.
Subsequently, Chrysler assigned its interests in the note and mortgage back to M & M Dodge, the latter instituting this action for a deficiency judgment in June 1982. The amount claimed by M & M is $3,308.96 including attorney's fees.
In his reasons for judgment, the trial judge opined that Chrysler had acted improperly in raising Brown's monthly notes by $6.54 to pay for the insurance bought by Chrysler, since Brown already had the necessary insurance coverage.[1] Finding that *813 the creditor had previously wrongfully increased the debtor's obligation, the trial court denied the deficiency judgment.

ISSUE
The primary issue on appeal is whether the creditor can be denied a deficiency judgment under these facts and circumstances.

INCREASING THE DEBTOR'S MONTHLY PAYMENTS
The trial court found that Chrysler acted wrongly by increasing Brown's monthly payments from $166.48 to $173.02. We disagree. The mortgage note required Brown to obtain vehicle insurance which would protect the creditor's interests. Further, the mortgage expressly required Brown to provide Chrysler with the insurance policy itself.
If Brown failed to acquire the necessary coverage or if he failed, upon Chrysler's request, to provide "satisfactory evidence" of that coverage, Chrysler was clearly entitled to obtain the required insurance and to increase Brown's monthly notes by the amount needed to recompense Chrysler for the insurance purchased by it. Although Brown had obtained insurance, Chrysler had not been made aware of this. Its records indicated that Brown's policy had expired on November 7, 1980.
The debtor, Brown, verbally (via telephone) informed Chrysler that he did have insurance and that he would send Chrysler the policy. The creditor, Chrysler, requested a copy of the policy. In fact, Brown admittedly never sent Chrysler the policy but assumed his insurance agent had. Thus, Chrysler never received satisfactory evidence that Brown had obtained the necessary insurance. Under these circumstances the trial court erred in finding that Chrysler had acted improperly in raising Brown's monthly note.

DEFICIENCY JUDGMENT
The trial court cited four cases to support its conclusion.[2] We have examined those decisions and find that they are not applicable to the instant case.
A deficiency judgment is available to a creditor for any deficiency due on a debt pertaining to mortgaged property after the distribution of the proceeds of a judicial sale of that property, if the property was sold under an executory proceeding after following the required formalities, including appraisal. LSA-C.C.P. articles 2771, 2723; LSA-R.S. 13:4106.
Under an executory proceeding, the defendant/debtor may contest the order of seizure and sale either by an injunction proceeding or a suspensive appeal. Hood Motor Company, Inc. v. Lawrence, 320 So.2d 111 (La.1975), on remand, 334 So.2d 460 (La.App. 1st Cir.1976), writ den., 338 So.2d 288 (La.1976). If the creditor seeks to collect more than is lawfully due him, the debtor may enjoin this action during the executory proceeding. Spiro v. Richardson, 240 La. 192, 121 So.2d 741 (1960); Sample v. Elliott, 155 La. 941, 99 So. 705 (La.1924).
In the instant case, Brown did not seek to enjoin the seizure and sale nor did he appeal suspensively therefrom. He raised no objection to the seizure and sale. He pleaded his dispute with Chrysler as a defense to the deficiency suit.
Defenses to a deficiency judgment are limited to the lack of proper appraisal or to fundamental defects which would render the executory process null. Executory proceedings are fundamentally defective when the creditor has failed to present properly authenticated evidence, or to comply with the requisite formalities. League Central Credit Union v. Montgomery, 207 *814 So.2d 762 (La.1968); Bank of St. Charles v. Great So. Coach, 424 So.2d 462 (La.App. 5th Cir.1982); Cameron Brown South, Inc. v. East Glen Oaks, 341 So.2d 450 (La.App. 1st Cir.1976).
The issue between the creditor and Brown over the proper amount of the monthly payment should have been raised in the executory process proceeding. This dispute in question does not present a defect that is fundamental so as to render the executory process null and is not a defense to this subsequent suit for a deficiency judgment. Thus, this defense cannot be recognized and the trial court judgment must be reversed.
For these reasons, the judgment of the trial court is reversed and set aside. It is ordered that judgment is hereby rendered in favor of M & M Dodge, Inc. and against Eugene Brown for the sum of $3,308.96, plus legal interest from the date of judicial demand until paid. Eugene Brown is to pay all costs of the trial court and for this appeal.
REVERSED AND RENDERED.
NOTES
[1] Interestingly, Brown testified that he did not know whether he had reinsured the truck after the lapse of its insurance in November 1981. He was unsure as to whether he had any coverage on the truck when it was seized in April 1982.
[2] Katz v. Judice, 252 So.2d 532 (La.App. 4th Cir.1971), writ den., 259 La. 461, 254 So.2d 461 (La.1971); Blodgett Const. Co. v. Board of Com'rs, 153 La. 623, 96 So. 281 (1923); Alexandria & W. Ry. Co. v. Long Pine Lumber Co., 152 La. 399, 93 So. 199 (1922); People's Bank v. Cage, 40 La.Ann. 138, 3 So. 721 (1888).